Stay where you are because the next case is No. 18-1710, Purdue Pharma L.P. v. Iancu. And again, Ms. Sweezy. In these IPRs, there is a central problem with the board's decisions that I would like to focus on. And that is because they rejected these claims on the basis of something that came after our claims, not before. Remember, that's the Joshi published application. Joshi is not prior art, and Joshi was critical to all three grounds. And on that basis, the board should not have entered its unpatentability determinations. And this issue, what I would like to focus on this morning, is that this issue can be fully resolved as a matter of Ann Neal's failure of proof. There were two issues with respect to this priority debate. First, our priority date. And then second, the priority date of the Joshi prior art reference, the asserted prior art reference. And where the board erred here is on the first, our priority date. We should have been given August 6, 2001 as our priority date. And if you lose on that, Joshi is prior art, right? We have not disputed that Joshi is entitled to its August 30th date. So yes, yes, Your Honor, if the court does not agree with us. But let me give you several reasons why the court should agree with us. Specifically, this issue was not disputed. Ann Neal never contested our priority date of August 6, 2001. What the fight was about was whether we were entitled to an even earlier date because of Joshi's earlier date that was asserted by Ann Neal. There was no dispute that we were entitled at least to August 6, 2001. And let me point to some record sites. But the board concluded you weren't, right? The board concluded that we weren't, but it shouldn't even have addressed this issue because there was no dispute. It didn't even have to reach the merits and it shouldn't have reached the merits because Ann Neal didn't even tee this up. In our patent owner response, we couldn't have been clearer to put Ann Neal on notice that we understood Ann Neal to have agreed to our August 6, 2001 date. And the burden's on you to establish the earlier date, right? Only if there is a dispute about this, Your Honor. First, the burden of persuasion is always on Ann Neal. But second, Ann Neal didn't even try to dispute this. I'm not sure that's true with respect to this issue, but go ahead. I believe that's what the dynamic drinkware says because the burden always rests on Ann Neal to establish that it has a prior art reference. And when we said in our patent owner response, we said at Appendix 2718, Ann Neal is not contesting that the 376 patent is entitled to priority of August 6, 2001. That gave Ann Neal an opportunity in its reply to actually contest that. And it did not. And its expert did not. In its reply at Appendix 4294, it applied our August 6, 2001 date. Again, there was a fight about April, but not about August 6, 2001. And the board correctly found that Joshi is entitled only to a later date, and that's why Joshi doesn't predate us. I'll also point the court to Dr. Tim Coe, Ann Neal's expert, who has said at Appendix 4332, the 376 patent claims priority to its own provisional, filed on August 6, 2001. And that's the date he applied for evaluating the prior art. So simply as a matter of... So you're not saying that they stipulated to the earlier date? You're just saying they didn't raise the issue? However you want to look at it, Your Honor, that's right. They didn't put this up before the board. And one fundamental aspect of IPRs that this court has recognized is that it still is an evidentiary, burden-based system. It's not the board's place to come in and inject itself into an issue that the parties are not disputing. And there was no... Did you raise this issue in your book brief? We did, Your Honors. I believe at page 39 of our opening brief. And again in our reply. I'll get the exact pages for you. On page 39 of our opening brief, we said in the middle of that full paragraph, Amnil therefore never disputed that the 534 provisional application sufficiently describes the 376 invention. In other words, to give us the provisional priority date. And we conclude by saying again, Amnil never contested the relevant issue. We again in our reply brief at pages 12 through 14, again point out, Critically, neither Amnil nor its expert ever argued or offered evidence that Purdue's provisional application did not support the claims of the 376 patent. In fact, they affirmatively agreed. So your argument is that you didn't have any obligation to produce evidence on that? The burden of production does rest on you. You at least agree with that, right? Respectfully, Your Honor, only if the issue is teed up. When the parties take an issue off the table, and of course there's lots of reasons. I don't know that they took the issue off the table. You're saying they just didn't raise it. They didn't raise it or they didn't dispute it. And in fact, they affirmatively embraced it. If, however, you want to look at it as a matter of burdens, then under that lens as well, we had a burden of production. And we did point to our provisional specification and how it supports the claims of the 376 patent. And again, even if you look at it from the burden shifting framework, Amnil did not come back with any evidence to dispute that. It was arguing about issue preclusion. Yeah, but on the face of it, I think what the board is saying is it doesn't provide the required place marks, right? The board was wrong about that, Your Honor. Why was the board wrong about that? The board was wrong because our patent very clearly calls out the two gelling agents used in this patent. Those are PEO and HPMC. It includes them in a single paragraph that specifically acknowledges that the listed agents can be combined in mixtures. And then throughout the patent, it repeatedly refers to these two gelling agents as especially preferred, preferred, the only example that's given. That fully meets this court's case law where it talks about, does the patent indicate that certain ingredients are of special interest or emphasized? And certainly our specification did not. Go ahead. With respect to this latter point, you mentioned that not only in that one paragraph were a large number of polymers mentioned, that there were other references also in the provisional. But the board, or at least the PTO, I guess, argues that those were not raised, those other sections of the provisional. What's your answer to that? Because I didn't see anything in your reply brief that specifically addressed that. I have a couple of responses, and I think we meant to or attempted to, but let me clear it up. So first, again, because this was never raised by Anne Neal, we did a sort of belt and suspenders when we pointed to that paragraph as providing written description support from the provisional for our patent, 376 patent. But it wasn't teed up. So in that situation, we're sort of in this hypothetical world. Okay, well, I understand there may be an explanation, but to get to the first point first, you didn't call the board's attention to any of the other pages of the provisional other than the one that you referred to initially that has all the compounds listed? What I can tell you, Your Honor, we did not specifically refer to other passages, but we did provide expert testimony who evaluated the provisional and the patent and said there is sufficient written description support. He provided— But did he actually point to those other passages of the provisional? Okay, that's all I need. He pointed to the one representative example, but again, because this issue had not been teed up by Anne Neal, it's sort of hard to fault us. No, I understand your argument. I just wanted the factual— Factually— —for the question. Yes, and I would make one more point here is that, again, when this is an issue that the board has no reason, there's no argument from a party that's advancing it, we didn't have notice. And for it to raise this in its final written decision, that is not how these proceedings should operate. However, if the board were going to go down this path, if it's going to start looking at evidence, the obligation has to be on the board to look at the evidence as a whole, and certainly in this case where you're talking about a legal document like a specification. And so if the board is going to somehow put the burden on us when it wasn't even teed up, it couldn't have just put blinders on and decided that that one paragraph wasn't enough. It had an obligation to look at the plain face of the specification where these two other ingredients are repeatedly called out as preferred and especially preferred. Well, with respect to— Repeatedly called out? Yes, Your Honor. There's no discussion in the provisional about combining the two, right? There is. On Appendix 107, it says that these different agents can be combined as mixtures. Yeah, but that's talking about the two large categories of agents, right? I respectfully, Your Honor, would dispute that those are large categories. It's a single paragraph. What mixture are you on? I'm sorry. This is Appendix 1007. 1007. I'm sorry. Appendix 1007, and it's the second full paragraph, the beginning of it, where we talk about in certain embodiments of the present invention wherein the dosage form includes an aversive agent comprising a gelling agent. And we list about 30 agents, and then we say at the conclusion, mixtures thereof. Right, and that's the page that was called, I guess. That was. And in addition, the next page in the appendix, which is 1019, this is where we talk about preferred sustained-release polymers. This is about five lines down. And we call out especially, this is in the parentheses, especially hydroxypropylmethylcellulose, HPMC. Again, on page 1020 of the appendix, about seven lines down, we start in certain preferred embodiments. We list a possible dosage form, and then there's a sentence that begins, the hydroxypropylmethylcellulose is preferably one of these celluloses such as, again, HPMC. On appendix 1031, twice we call out PEO, polyethylene oxide, as an example. And again, on appendix 1032, we refer multiple times to PEO. And on appendix 133, PEO is the only example in the EG parenthetical. This is about five lines down from the top of that page. That was plenty of support for a person of ordinary skill in the art to understand that we had possession of these two gelling agents in combination. And what is your basis, again, for saying that you didn't waive the argument on that, that you didn't cite those specifically? I would boil it down to two issues. One, this was never in dispute, so the fact that we sort of belt and suspenders this in our patent owner response and annual never came back, the board can't somehow hold us to a standard that we didn't even have to try to meet. And two, once the board was on that path, it did need to look at the full specification. But fundamentally, it was annual's failure to even tee this up as an issue. Okay. You want to say the rest of your time? Yes, please. Thank you. Ms. Kelly. Good morning, Your Honors. May it please the Court. Before addressing the statements by my friend across the aisle, I would like to first state that each of the three grounds of invalidity that the board found is based on a strong primary reference. First, you have Palermo that teaches everything about the claimed invention except the use of PEO. Wouldn't we have to at least send it back if JOSHI wasn't prior art? I don't believe that Your Honors would, and for this reason. One is a legal reason and one is a factual reason, according to this case. I'll start with the factual reason. The factual reason is that the board, in the third ground of rejection, Royce is the primary reference. Royce, the board found, teaches everything about the claimed invention, but it does not specifically name opioids as the analgesic. Royce says, oh, you can use PEO and PMC for the controlled release of analgesics, but it doesn't say opioids. But the board, in that case, relied on Hoffmeister as teaching both opiates and the use of HPMC as a gelling agent. So nowhere to disclose all of the elements are we relying on JOSHI in that case. And the board only relies on JOSHI and Hoffmeister as it characterizes those references as just merely verifying what Royce has already taught. And I would direct Your Honors' attention to the board's decisions. If you look at the board's decision at appendix, page 67, you see the board referring to what the petitioner has argued. It's Royce teaching a formulation that includes both PEO and HPMC as claimed, and then it says that Hoffmeister and JOSHI merely would confirm that both are known gelling agents. So in this case, they're merely verifying that these things are gelling agents, but Hoffmeister already does that. We don't need JOSHI for that reference, especially since, as the handbook indicates, although not cited in this particular grata rejection, people of ordinary skill in the art knew that both of these things, both of these compositions worked as gelling agents. They're identified as gelling agents in the pharmaceutical handbook. And then if you look to the board's decision on page 74 of the appendix, it describes Hoffmeister, the board says, as such, Hoffmeister and JOSHI verified that the materials included in Royce's controlled release formulation would necessarily provide abuse deterrence. Again, they were merely confirming what gelling agents do, but you could drop JOSHI out of that, and Hoffmeister still provides that teaching. And that also confirms what is already taught about gelling agents and Hoffmeister in combined use with opiates. And getting back to what I said about as a legal sort of matter, at least certainly the board could have said, well, we conclude that JOSHI is not prior art, but nonetheless this combination renders this obvious because Royce teaches it and Hoffmeister, or whatever it is, tells us that it's a gelling agent. But, so I guess in a sense what you're saying is if they made an error about JOSHI, that's harmless error? Is that the idea? That is the idea. Just as when, in two situations, when the board gets a rejection from the examiner, I would say it's akin to that sort of situation where the examiner may cite a reference as being obvious, and then the board says, no, it's actually anticipation, it's the epitome of obviousness. The other time when the board may do that, and I understand that you're a viewing court, and I'll connect the two together in a moment, but the other time is when the board finds that in a rejection based on multiple references, that one or two of the references may just be duplicative or unnecessary. The board doesn't affirm the examiner based on those additional references. And this court has certainly affirmed the board doing so and has never found that that's a new ground of rejection. What's an example of a case like that? I'm sure there are examples where this court has affirmed decisions like that and found that they weren't new grounds of rejection. I'm absolutely sure of that. I'm not sure about this court doing that in particular, but if you don't agree that JOSHE is prior art and you're not satisfied that this is something you can do as a body review, then you can remand to the board to consider the third ground of rejection in the absence of JOSHE. Okay, well let's talk about whether JOSHE is prior art. Okay. And in particular, whether this issue about whether the 376 patent finds support in the provisional was raised by the petitioner. Was it raised by the petitioner? It was not raised by the petitioner, and the reason for it not being raised is, as Ms. Swayze notes, the parties, neither party challenged either party's ability for 10 years. This litigation between the parties has been going on for 10 years. Neither party challenged the other party's entitlement to its provisional's filing date. And it wasn't until this proceeding had already been going on when Well, but the petitioner did rely on JOSHE as prior art, right? Yes. Was there sole theory collateral estoppel, or what was their theory? I don't think there's a yes or no answer, so if you'll indulge me, I'd like to take you through what happened. The petitioner filed three separate petitions. The one in each JOSHE is named. The petitioner then, I'm sorry, two petitions with three grounds of rejection total. The petitioner, a suited JOSHE, never challenged their ability to get priority to their provisional filing date, and also in response, in the patent owner's preliminary response to the petitions in both of the IPRs, Purdue never challenged JOSHE's entitlement to its priority date, and they also never challenged JOSHE's entitlement to its provisional's filing date. Then, once the proceedings had already started, then and only then did Purdue say, wait a second, they have not shown that JOSHE is entitled to its provisional's filing date based on similarities between this, because their statement... And the board said that JOSHE was not entitled to the date of the provisional filing, right? No. What the board actually said was that O'Neill had not shown that JOSHE was entitled to its provisional's filing date by producing a claim chart, and that is what the board actually said. It was really... They never found that JOSHE wasn't entitled to its provisional's filing date. What they found was that O'Neill hadn't carried its burden. Let me see if I can understand this. Are you saying that the petitioner was arguing that JOSHE was prior art based on a theory of collateral estoppel, one, and two, on the theory that JOSHE was entitled to the date of its provisional filing? Yes. They had asserted in their initial petition that JOSHE was entitled to its provisional's filing date, but they did so based on their expert witness's statement that the specifications of both were substantially identical, and they didn't get into some sort of detailed response. And then once the proceedings had started, in the patent owner's response, then Purdue said, oh, that expert witness's statement isn't sufficient. They need to provide more information than just some sort of conclusory statement, which I think both parties... I'm sorry, conclusory statements about what? That JOSHE and JOSHE's provisional specifications were nearly identical. Yeah, okay. And they said that isn't enough to meet their burden. And so in response, then O'Neill came back and said, well, you can't challenge that now. This has been a settled issue about JOSHE being entitled to client priority back to its provisional. That's been settled in over 10 years of litigation between the two of us, so you can't claim that. And then at oral argument, then for the very first time, Purdue came in and said, well, you know, you look at dynamic drinkware, and you have to show us that all of the claims, and that was what they had asserted, that all of the claims under dynamic drinkware must be supported in JOSHE's provisional in order for JOSHE to be entitled to it. And even though they may be, they never challenged the substance of whether those claims were, nor could they, as we explained in our brief, because the claims are substantially identical. I mean, 19 are substantially identical. Their whole argument was that O'Neill hadn't met its burden. So it wasn't about the substance. It was about whether O'Neill had met its burden of proving that. But the board agreed that it hadn't. The board agreed that it had not met its burden. But it wasn't an issue of, as a factual matter, there's no support. But O'Neill never came back and said, well, even if so, Purdue has not established that it's entitled to the priority date of its purview. No, they did not do that. What would happen here now that the petitioner has dropped out, if we were to remand this? Would the proceeding continue? I'm not exactly sure how. I think the proceeding could continue as an ex parte matter. I don't know exactly how it would proceed if it came back in that particular form. If your honors want some sort of briefing on that or opinion on that, please let the agency know and we can advise you on that. Because that's the sticky wicket here. We have two parties who, until incredibly recently, never disputed each other's priority claims. One party never challenged Joshi's claim to its provisional, and the other party never challenged Purdue's priority claim to its provisional. Then all of that sort of went poof in some sort of legal maneuvering before the board. Now you say that the first time that the issue of priority for the Purdue patent was raised explicitly vis-a-vis Joshi was at the oral argument. They raised it once the inter-parties, Purdue raised it once the inter-parties proceedings had started, but they said only their expert witnesses' statement that the specifications were identical was insufficient. That's supposed to be the Joshi. Right. And then at an oral argument before the board, they said, well, you need to provide some sort of claim chart. You need to show that all the claims, and they maintain this argument again in their blue brief, you need to show us that all the claims are supported in Joshi's provisional, and you didn't meet that evidentiary burden. They never said that you couldn't meet that burden. They raised that for the first time at oral argument before the board. Right, and then if you look at that. At oral argument before the board, the entitlement of the 376 to the provisional date was not raised, right? I do not recall, but I do not believe that to be so, but I would have to reread the record. But you're saying that everybody had assumed up to that time that 376 got priority to the provisional date, right? When going through this case, I look at it sort of like it's the goose gander principle. I think both parties just up until that point were just assuming you're not going to comment on this priority challenge and I'm not going to comment on your priority challenge. And one of the interesting differences here, though, and I think it's an important difference to bear in mind. And if Joshi's entitled to his provisional filing date, then it's irrelevant as to whether 376 is entitled to the provisional filing date. Yes, that is irrelevant in that case, and it is also irrelevant if you agree that Purdue isn't entitled to its, you know, alternatively, the board knew that its collateral estoppel findings, or I think at least suspected, were really, you know, more of an exception permitted in rare circumstances, but not your typical vanilla flavor of collateral estoppel. And so they alternatively found that Purdue hadn't met its burden. And I see that I'm over my time. Is there anything pressing? No, I think that's it. Thank you, Ms. Collins. Thank you. Thank you, Your Honor. Let me see if I can clear up a few points. Let me start first with your question, Judge Bryson. We did in our reply, perhaps not as clearly as we could have, but in the middle of page 13, we responded to the PTO's argument about us not initially pointing the board to more than the one paragraph, by saying that Anne Neal had forfeited this by wholly failing to contest that the 376 patent is entitled to the benefit of its provisional application. That's page 13 of our reply. Right. Just very quickly, what I was concerned with was whether the whole argument about JASHE and its entitlement to the provisional, on which the whole priority issue now turns, was raised prior to the oral argument for the board. Yes. And that brings me to my next point. I can clear that up. The PTO's argument really rests on us not raising this in our preliminary response. There's no obligation to do that. But in our patent owner response at appendix 2734 to 2735, we cited the leading cases on this, Dynamic Drinkware, Giacomini, and a board's decision, Ariosa, and we said Anne Neal has not met its burden of showing that JASHE is entitled to the benefit of its provisional filing date. And at the oral hearing, this is at appendix 5227 to 5230, Anne Neal understood it had this burden, both of production and persuasion, and it admitted to the board it had not carried this. That's fully in accord with this court's case law. Admitted to the board that it didn't care? Where did it admit that? It did. At those pages 5227 to 5230, it said, we didn't do a comparison between the JASHE provisional and the JASHE patent. It did not do any sort of. Well, that's not quite the same thing as saying they didn't carry their burden. Where is this? 5227, did you say? Yes, 5227. This is from the board's oral hearing, and they say at, this is line, it starts on 5227, line 12, we need to show the identity of the disclosures, and we believe we have done that. And then the judge says, but you need to show the identity of the disclosures with the claims of the JASHE publication, correct? Amul's counsel agrees that that's what this court's case law requires, and then on page 5228. Now we meet that test. So it doesn't sound like a concession to me. That is, she doesn't have anything to back that up, Your Honor. But that may be, that's a different argument. It's not a concession that they haven't met their burden. Let me then put it more crisply. They did not have any evidence. They had not submitted any evidence to the board. You have the provisional and JASHE, and the provisional itself is evidence, isn't it? It is, Your Honor, but Amul ultimately carries both the burden of production and the burden of persuasion. And this is where I want to be very clear. There is no goose gander rule here, because for our priority date. What is it? In what respect, if we consider the JASHE reference and the JASHE provisional, in what respect does the provisional not support the JASHE reference? There are four claims in the JASHE reference that have limitations that are not recited in the JASHE provisional claims. I believe it's 17, 18, 19, 20 or thereabouts. So the argument depends entirely on the notion that dynamic drinkware requires that every single claim be supported by the provisional. No. In fact, you don't need to reach that issue because our position is that Amul did not try to attempt any claim comparison between the patent. Put that aside. I'm asking you, in what respect is JASHE not supported by the JASHE provisional? And you say, well, there are four claims that weren't in the provisional. And I said, that depends on a reading of dynamic drinkware that every claim has to be supported. Okay. Put that argument to one side. Okay. What other argument is there for the theory that JASHE wasn't supported by the provisional? What we would have argued if this had been presented is that JASHE has examples that are in the later reference, but not in the JASHE publication. But Amul never tried to establish similarity. No, no, no. I understand your argument about their, in your view, not properly raising this, but let's assume we conclude that it is properly raised, that the provisional is evidence. What's wrong with the theory that JASHE, the relevant claims of JASHE are supported by the provisional? Because there are, there is not specification support for claims. And you can see this in the addendum. What do you mean there's not, some of the claims are identical. Some of them are, but not. 19 of them are identical. But some of them are not. But that goes back to the argument, the first argument, which is dynamic drinkware, in your view, requires that all of the claims be supported. If that argument is wrong, if we reject that argument as a reading of dynamic drinkware, then what's left? I would still reiterate our point that this is Amniel's burden to prove. So that's why, I mean, if this bit of hypothetical. Those are your two arguments then. Right, because they had never teed this up. So I can't point you to our response because they had not sufficiently presented this. And the board found this. The board, of course, on this fact question, determined that Amniel had not borne its burden of proving JASHE. If we conclude that the issue is properly, before the board, and that the provisional is evidence, then your only argument as to why JASHE is not supported by the provisional is that it's not every single claim. Is that correct? And there are different aspects of the specification. And Amniel relied on certain aspects of the later reference for some of our claims. What do you mean, different aspects of the specification? So the other aspect of considering priority is whether what Amniel is relying on for its asserted prior art can be traced back. Or the other way is to say it carried forward. But if the claims are identical, what difference does it make about the specification? You mean that there's no written description support for the claims that were in the provisional? That can't be the argument because it's the same specification. What's the argument? It's not the same specification, Your Honor. There are additional examples in the later reference that Amniel relied on in this proceeding that are not in the original JASHE application. But for what purpose? Examples four, five, and six. Rely on for what purpose? As asserting that those examples could be relied on to determine that our claims were not obvious. So the ultimate merits question. I'm sorry. There are 19 claims that are the same. Are those 19 claims not supported by the provisional? Respectfully, Your Honor. I can't answer that because this issue wasn't teed up. So I'm not in a position to answer that. And there are two different inquiries going on here. The first is whether Amniel showed that any claim in the later reference is supported by the specification. And then the other is in the later reference, what Amniel is relying on. Claims, specification, whatever. Is what Amniel is relying on, can it be traced back to the provisional? Because for the later reference to have the benefit of that earlier date, it had to have been disclosed then. It wouldn't otherwise be entitled to that earlier date. Could you spend a minute addressing the PTO's harmless error argument? Yes, thank you. And I did want to get to that, so I appreciate that. We can agree on one thing. If Joshi is not prior art, this court doesn't need to remand. It should instead reverse, because Joshi was critical to every ground. And I can point the court specifically to Appendix 74. Well, suppose we were to conclude that it wasn't critical to every ground. That's the question I'm asking. If we assume that Joshi just was surplusage and it wasn't critical to any of the grounds, can we affirm? Your Honor, I think that would be overstepping the bounds of this court. Why? Because it is Amniel's burden as the petitioner. Amniel presented all three grounds as relying on Joshi. Amniel knew that we were- Well, if one of the grounds falls, if one of the references falls out, you can still find it obvious based on the others, right? I would point this court to a case- No, no, but try to answer my question. Okay. If one of the references falls out, no, you cannot affirm, unless there's some indication in the record that that reference was cumulative or duplicative. We couldn't make a determination ourselves that a particular reference was plainly duplicative? I mean, suppose you had two different versions of the PDR as references and one of them for some reason fell out. You can't be really arguing that under no circumstances, if a reference falls out, can we affirm? I don't mean to go that far, but on just- So how far are you going? I'm going as far as this case, because in this case, Joshi was always asserted as critical. Amniel never tried to argue- Okay, but suppose we disagree with that. Suppose we do conclude that it's cumulative and that the question of whether it's prior or it really doesn't make a difference in terms of the obviousness determination. Can we affirm? Under your hypothetical, Your Honor, premised on that you have the authority and the role to do that, I would have to agree, but I do not think that is the appropriate role, particularly when the petitioner here never, knowing that its principal prior art reference was challenged as prior art, never came up with a combination and the Board itself did not either. And I will note, at the oral hearing, this came up. The Board was concerned about notice to us as to any sort of combination without Joshi and the Board specifically asked Amniel, did you ever raise this in your reply because at least Purdue could have come back with a surreply and addressed this. We had no opportunity to do that and respectfully, that would be the same if this court were to step in and decide that here. Okay, Amniel. All right, thank you, Ms. Sweezy. Thank you. Thank both counsel. The case is submitted.